**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re New Oriental Education & Technology Group Inc. Securities Litigation | Civil Action No. 1:22-cv-01014-JHR<br><br>Honorable Jennifer H. Rearden |

<u>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR
ALTERNATIVE SERVICE OF THE EXECUTIVE DEFENDANTS**</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

III.  ARGUMENT ...................................................................................................... 6

      A.    Service Through Alternative Means Is Appropriate In This Action....................... 8

      B.    New Oriental Lacks Standing To Contest This Motion And Its Arguments
            Against Alternative Service Lack Merit .............................................................. 12

IV.   CONCLUSION ................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
  2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ........................................................7, 8, 13, 14

*Advanced Aerofoil Techs., AG v. Todaro*,
  2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ............................................................................7

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................................14

*Baliga v. Link Motion Inc.*,
  2020 WL 5350271 (S.D.N.Y. Sept. 4, 2020) ...............................................................7, 13, 14

*In re Bibox Grp. Hldgs. Ltd. Sec. Litig.*,
  2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) ........................................................................9

*Brown v. China Integrated Energy, Inc.*,
  285 F.R.D. 560 (C.D. Cal. July 17, 2012) ............................................................................15

*Cadence Design Sys., Inc. v. Syntronic AB*,
  2022 WL 2290593 (N.D. Cal. June 24, 2022) .......................................................................13

*Cunningham v. General Motors LLC*,
  2020 WL 4748157 (S.D.N.Y. Aug. 17, 2020) .........................................................................7

*Devi v. Rajapaska*,
  2012 WL 309605 (S.D.N.Y. Jan. 31, 2012) ..........................................................................14

*Ehrenfeld v. Salim A Bin Mahfouz*,
  2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) .........................................................................16

*Elsevier, Inc. v. Siew Yee Chew*,
  287 F. Supp. 3d 374 (S.D.N.Y. 2018) .....................................................................................8

*Farrell v. Burke*,
  449 F.3d 470 (2d Cir. 2006) ..................................................................................................12

*In GLG Life Tech. Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) .................................................................................. *passim*

*Jian Zhang v. Baidu.com Inc.*,
  293 F.R.D. 508 (S.D.N.Y. 2013) .............................................................................................7

*Kyjen Co. LLC v. Individuals, Corporations, Limited Liability Companies,*
*Partnerships, and Unincorporated Associations Identified on Schedule A to*
*the Complaint,*
2023 WL 1345781 (S.D.N.Y. Jan. 31, 2023) (Rearden, J.)...................................8, 9

*LG Elecs., Inc. v. Asko Appliances, Inc.,*
2009 WL 1811098 (D. Del. June 23, 2009)........................................................15

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,*
265 F.R.D. 106 (S.D.N.Y. 2010) .....................................................................13

*Nurlybaev v. ZTO Express (Cayman) Inc.,*
2018 WL 11222556 (S.D.N.Y. Apr. 6, 2018)...................................................13

*Owen v. Elastos Foundation,*
2023 WL 194607 (S.D.N.Y. Jan 11, 2023) .......................................................13

*Prediction Co. v. Rajgarhia,*
2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ..............................................13, 16

*RSM Prod. Corp. v. Fridman,*
2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)...................................................10

*S.E.C. v. Anticevic,*
2009 WL 361739 (S.D.N.Y. Feb. 13, 2009)........................................................7

*SEC v. China Ne. Petroleum Holdings Ltd.,*
27 F. Supp. 3d 379 (S.D.N.Y. Mar. 27, 2014) ..................................................16

*In re Sinohub, Inc. Sec. Litig.,*
2013 WL 4734902 (S.D.N.Y. Aug. 14, 2013) ...................................................14

*Smart Study Co. v. Acuteye-US,*
2022 WL 2872297 (S.D.N.Y. July 21, 2022) ....................................................13

*Stream SICAV v. Wang,*
989 F. Supp. 2d 264 (S.D.N.Y. 2013)...............................................7, 10, 11, 12

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
486 U.S. 694 (1988).........................................................................................10

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 4(f) ............................................................. *passim*

## I.    INTRODUCTION

Lead Plaintiff ACATIS Investment Kapitalverwaltungsgesellschaft mbH ("ACATIS" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for alternative service under Federal Rule of Civil Procedure 4(f)(3).

As set forth in its Complaint, Lead Plaintiff alleges violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendant New Oriental Education & Technology Group Inc. ("New Oriental" or the "Company")—once the largest for-profit education provider in China—and three of its most senior executive officers: Michael Minhong Yu, the Company's founder and Board Chairman, its CEO Chenggang Zhou, and CFO Zhihui Yang (together, the "Executive Defendants").  Defendant New Oriental agreed to accept service in this action, and is represented in this case by New York-based law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").  *See, e.g.*, ECF No. 56 (Stipulation) at ¶9.[1]

Despite its diligent efforts to date, however, Lead Plaintiff has been unable to serve the Executive Defendants because they reside in China, and because Lead Plaintiff has been unable to ascertain their residential addresses, which is a requirement to accomplish service through the Hague Convention.  Lead Plaintiff's efforts to obtain this information have been extensive and costly—after New Oriental and Skadden refused to provide their addresses, Lead Plaintiff employed Lead Counsel's in-house investigators and retained two third-party investigators and a service-of-process consultant, to determine the home addresses of the Executive Defendants.[2]

---

[1] References to "Ex. __" are to the accompanying Declaration of Michael D. Blatchley.  All emphasis is added and internal citations omitted unless otherwise noted.  References to "¶__" are to the Second Amended Consolidated Complaint (ECF No. 63) ("Complaint").

[2] New Oriental and Skadden have refused to accept service on behalf of the Executive Defendants or to provide Lead Plaintiff with the information needed to attempt service through the Hague Convention.  Skadden has explained that although it represents New Oriental, it does not represent the Executive Defendants and is not authorized to accept service on their behalf.  *See* Ex. A.

Those efforts resulted in Lead Plaintiff identifying several addresses seemingly associated with the Executive Defendants—but unfortunately, none of those addresses are those defendants' residences, as confirmed by Lead Plaintiff's investigators in China. Thus, even though service through the Hague Convention in China can often take months, if not years, Lead Plaintiff cannot even begin to attempt to serve the Executive Defendants through the Hague Convention, bringing this action to a standstill as to those defendants.

For these reasons, Lead Plaintiff requests that the Court permit alternative service of the Complaint on the Executive Defendants—the Company's Chairman, CEO, and CFO, respectively—through those senior executives' corporate litigation counsel here, Skadden. The facts favoring alternative service are readily and abundantly met here, as made clear by numerous decisions in this District granting alternative service on the executives of a corporate defendant through the corporate defendant's litigation counsel under circumstances just like those here.

First, Lead Plaintiff has diligently attempted to effectuate service through the efforts of its in-house investigators and two retained third-party firms without success, and it is clear that the Court's intervention is needed. Second, it is "virtually guaranteed" that Lead Plaintiff's proposed method of service through Skadden would provide notice of this lawsuit to the Executive Defendants. *See In GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. 262, 265-67 (S.D.N.Y. 2012). Indeed, given their status as the Company's Chairman, CEO, and CFO, respectively, it would be virtually "impossible to imagine" that the Executive Defendants would not be informed that service was destined for those officers by the Company's counsel if the Court were to authorize it. *Id.* at 267. Last, under these circumstances, service on Skadden clearly comports with constitutional notions of due process, and allowing the Executive Defendants to evade service any longer would only impede the efficient resolution of the action. *Id.* at 267-68.

Lead Plaintiff respectfully requests the Court grant its motion.[3]

## II.    BACKGROUND

The Complaint alleges claims for violations of Sections 10(b) and 20(a) of the Exchange Act arising out of Defendants' false or misleading statements and omissions about the two most important aspects of New Oriental's business—its compliance with existing regulations governing the afterschool tutoring industry in China and the existence and impact of regulations banning afterschool tutoring that were not publicly disclosed until the end of the Class Period.

First, New Oriental falsely claimed that it "strictly abided" by and had "never been penalized" for violating existing regulations when, in truth, New Oriental routinely falsified teachers' credentials, misled parents about its programs, and engaged in "price gouging" and other prohibited misconduct.  ¶¶79-98.   Second, beginning in 2021, Defendants falsely denied reports that new regulations that had been adopted (but not yet been publicly disclosed) would negatively impact the Company, telling investors that New Oriental had not taken "any steps" to address them, falsely denied reports of massive layoffs, and dismissed investor concerns as unfounded "market rumors."  ¶¶19, 123, 151.  While making these false statements, and just days after the new regulations were secretly approved—but before they were publicly disclosed—New Oriental insiders sold millions of dollars of their personal shares in highly suspicious trades, with Defendants reaping over $230 million from insider sales during the Class Period.  ¶¶186-92.

Investors were harmed when a series of disclosures revealed New Oriental's "illegal acts of false propaganda and price gouging" and "repeated" violations of existing regulations, culminating in the government's announcement in July 2021 that for-profit afterschool tutoring in

---

[3] Before the matter was reassigned to this Court, Lead Plaintiff and New Oriental submitted pre-motion correspondence on the issue, outlining their respective positions. *See* ECF Nos. 64 and 65.

China would be banned altogether. In response, New Oriental shares lost 90% of their value in just weeks. ¶¶254-60.

The first action alleging Exchange Act claims against New Oriental was filed on February 4, 2022. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), on May 13, 2022, Judge Marrero consolidated that action with another pending against New Oriental and appointed ACATIS as Lead Plaintiff of the consolidated action. *See* ECF No. 48. While New Oriental accepted service, New Oriental and its litigation counsel refused to accept service on behalf of the Executive Defendants, who are believed to reside in China.

Since being appointed as Lead Plaintiff, ACATIS has diligently sought to serve the Executive Defendants in this action. Specifically, Lead Plaintiff asked New Oriental and its counsel Skadden if they could accept service on behalf of the Executive Defendants or to provide the addresses of the Executive Defendants so that Lead Plaintiff could attempt to effectuate service through the Hague Convention. *See* Ex. A. New Oriental and Skadden denied Lead Plaintiff's requests. At the same, and following those unsuccessful efforts, Lead Plaintiff employed Lead Counsel's in-house investigators and two separate third-party firms in an effort to attempt to ascertain addresses for the Executive Defendants so that it could attempt service through the Hague Convention. *See* Exs. B at ¶6; C at ¶3.

First, Lead Counsel were unable to identify any U.S. addresses associated with the Executive Defendants through a public records search—the same search that Lead Counsel performs to locate addresses for third-party subpoena recipients and to identify the locations of other parties and witnesses in the cases Lead Counsel prosecutes. Ex. B at ¶5. Lead Plaintiff also consulted with a third-party process server with extensive experience effectuating service through the Hague Convention to parties located in China, who advised Lead Plaintiff on the difficulties

of obtaining residential address information for residents of China in light certain legal and practical restrictions, as well as the length of time it takes to effectuate service through the Hague Convention in China.  Ex. C at ¶¶6-7.

Lead Plaintiff also retained a third-party investigatory firm with personnel and offices in China to conduct additional address searches.  While a search of public corporate records by that third-party firm identified certain addresses potentially associated with each of the Executive Defendants, following further research—including an on-the-ground visit—Lead Plaintiff confirmed that none of those addresses are the residential addresses of the Executive Defendants where service could be attempted.  Specifically, a search of public corporate records in China yielded the following:

- **Minhong Yu**: According to public company files updated in May 2022, Minhong Yu was associated with the following address: No. 3 Houying Beishangpo, Qinglongqiao Subdistrict, Haidian District, Beijing 100031 (中国北京市海淀区青龙桥后营北上坡3号 100031).

- **Zhihui Yang**: According to public company files last dated in June 2017, Zhihui Yang was associated with the following address: No. 2202, Floor 112, Wang Jing Garden, Chaoyang District, Beijing (北京市朝阳区望京花园112号楼2202室).

- **Chenggang Zhou**: Two publicly-listed addresses were identified for Chenggang Zhou; however, both addresses were instead commercial addresses belonging to New Oriental, and not residential addresses where service could be attempted. Specifically, the search identified 9/F. No. 6 Haidian Zhong Street, Haidian District, Beijing 100080 (中国北京市海淀区海淀中街6号新东方大厦9层), which is an office address for New Oriental, and 40th Floor, Dah Sing Financial Centre, No. 248 Queen's Road East, Wanchai, Hong Kong (香港灣仔皇后大道東248號大新金融中心40層), which is another office address for New Oriental.

Ex. B at ¶7.  To determine whether the addresses that were identified for Defendant Yu and Defendant Yang could be used to attempt service, Lead Counsel instructed the third-party firm to conduct additional research concerning the properties at these locations—which included physical inspection of the property at the address associated with Defendant Yu (No. 3 Houying

Beishangpo, Qinglongqiao Subdistrict, Haidian District, Beijing) and additional public records searches for the property associated with Defendant Yang (No. 2202, Floor 112, Wang Jing Garden, Chaoyang District, Beijing) in early March 2023.  The physical inspection of No. 3 Houying Beishangpo confirmed that no physical property (as confirmed by photographic evidence) was located at that address, which was instead a demolition site, which local workers and residents confirmed had been vacant for years.  Ex. B at ¶8.  With respect to the property at No. 2202, Floor 112, Wang Jing Garden, Chaoyang District, additional searches confirmed that the property was placed on auction by the People's Court of Chaoyang District, Beijing in October 2022, and was bought and sold by two third parties, neither of whom is Defendant Yang.  *See* Ex. B at ¶9.

In sum, Lead Plaintiff's extensive efforts to identify addresses of the Executive Defendants to effectuate service through the Hague Convention have continued through the present but, despite this diligence, it has been unable to do so.  Additional searches through investigative means sometimes used in the United States were not possible, including because strict data privacy laws in China limit the ability to identify residential addresses through other means.  Ex. C at ¶6.  As a result, Lead Plaintiff has been unable to effectuate service through the Hague Convention because the Executive Defendants' addresses are unknown, despite Lead Plaintiff's extensive efforts to identify them.

## III.    ARGUMENT

Federal Rule of Civil Procedure 4(f) governs service of individuals "not within any judicial district of the United States."  The Rule provides that individuals in foreign countries may be served by several methods including (i) internationally agreed means of service (*e.g.,* the Hague Convention), (ii) by means permitted under the foreign country's laws, or (iii) "by other means not prohibited by international agreement, as the court orders."  *See* Rule 4(f).  Thus, "on its face,"

Rule 4(f) "offers a choice between methods of service." *In GLG Life Tech. Corp.*, 287 F.R.D. at 265.

Courts have repeatedly recognized that there is "no hierarchy among the three subsections of Rule 4(f)" such that service under Rule 4(f)(3) as the "court orders" has been held to be neither a last resort nor extraordinary relief. *Baliga v. Link Motion Inc.*, 2020 WL 5350271, *8 (S.D.N.Y. Sept. 4, 2020) (cleaned up); *see also Advanced Aerofoil Techs.*, *AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012). Instead, it is "merely one means among several which enables service of process on an international defendant." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013); *see also Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) ("A district court is 'afforded wide discretion in ordering service of process under Rule 4(f)(3).'").

Thus, Lead Plaintiff "is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *S.E.C. v. Anticevic*, 2009 WL 361739, *3 (S.D.N.Y. Feb. 13, 2009) (emphasis in original); *see also Jian Zhang*, 293 F.R.D. at 512 ("numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies"). Rather, under Rule 4(f)(3), "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Cunningham v. General Motors LLC*, 2020 WL 4748157, *1 (S.D.N.Y. Aug. 17, 2020); *Anticevic*, 2009 WL 361739 at *3 (Rule 4(f)(3) provides "flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case.").

Further, even though courts sometimes require a showing of reasonable diligence to effectuate service through the Hague Convention before authorizing service through alternative means, the Hague Convention cannot be used to effectuate service where the party's address is not

known.  *See Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at

*4 (S.D.N.Y. Sept. 30, 2018) (citing the Hague Convention).  Courts in the Second Circuit have

held that an address is "not known" where a plaintiff has exercised reasonable diligence in

attempting to discover a physical address for service of process and was unsuccessful in doing so.

*See id*.; *see also Kyjen Co. LLC v. Individuals, Corporations, Limited Liability Companies,*

*Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, 2023

WL 1345781, at *2 (S.D.N.Y. Jan. 31, 2023) (Rearden, J.).

 Here, Lead Plaintiff readily satisfies the requirements for authorizing alternative service,

and the proposed alternative means of service is warranted in this case.

 **A. Service Through Alternative Means Is Appropriate In This Action**

 *First*, despite its efforts, Lead Plaintiff has been unable to serve the Executive Defendants

through the Hague Convention because serving a defendant in China "requires providing a

defendant's address to the Chinese Ministry of Justice."  *Elsevier, Inc. v. Siew Yee Chew*, 287 F.

Supp. 3d 374, 378-79 (S.D.N.Y. 2018).  Despite substantial effort, Lead Plaintiff's investigators

have been unable to locate current residential addresses for any of the Executive Defendants, and

New Oriental has refused to provide them.  *See* Exs. A; B at ¶¶5-10.

 Lead Counsel's in-house investigator, who has over 24 years of experience, and has

overseen hundreds of investigations into potential securities fraud, conducted an extensive

investigation to attempt to obtain addresses for the Executive Defendants. Ex. B at ¶¶2-3.  This

investigation included a search of public records to identify potential addresses associated with the

Executive Defendants. Ex. B at ¶5.  Lead Plaintiff also consulted with a third-party process server

concerning the feasibility to identify the Executive Defendants' residential addresses and other

means to effectuate service on individuals who reside in China, and retained an investigation firm

with offices in China that conducted additional records searches and physical inspections of an

address identified in China.  Ex. B at ¶¶6-9.  None of those efforts were successful in identifying current residential addresses for the Executive Defendants where service could be attempted.

As set forth above, Lead Plaintiff has more than demonstrated a reasonable attempt to identify addresses for service for the Executive Defendants through the Hague Convention, but has not been successful.  As such, the Executive Defendants' addresses are not "known," and service through the Hague Convention is not possible.  *In re Bibox Grp. Hldgs. Ltd. Sec. Litig.,* 2020 WL 4586819, *2-3 (S.D.N.Y. Aug. 10, 2020) (granting motion for alternative service where plaintiff was "unable to identify any physical address").  Indeed, in this case, attempting service through the Hague Convention would be a "pointless and lengthy exercise."  *In GLG Life Tech Corp.,* 287 F.R.D. at 266-67.[4]

Moreover, even assuming *arguendo* it was possible for Lead Plaintiff to effectuate service through the Hague Convention, "after accomplishing service in China, it often takes 10 to 12 months just to successfully obtain proof of service" (Ex. C at ¶7)—which would be long after the conclusion of New Oriental's ongoing motion to dismiss briefing, *see* ECF No. 68, thereby resulting in the inefficient outcome of separate, parallel, delayed litigation tracks for the Executive Defendants.  "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."  *In GLG Life Tech. Corp.*, 287 F.R.D. at 266-67 (collecting cases); *see also Stream SICAV*, 989 F. Supp. 2d at 280-81 (ordering alternative service because resorting to the "Hague Convention now would either needlessly delay the resolution of this case for many months…or result in the case against [one defendant] moving forward decoupled from the case against [another defendant]—an inefficient result").  Thus, even

---

[4] The diligence conducted by Lead Plaintiff's two separate investigative teams far exceeds that in *Kyjen Co. LLC*, 2023 WL 1345781, at *2, where plaintiff conducted no diligence, and instead "baldly asserted that Defendants often use multiple fictitious names and addresses."

if service through the Hague Convention were possible here (it is not), requiring service through the Hague Convention would result in the very kind of inefficiencies, delay, and "decoupling" that an order of alternative service would avoid.

*Second*, Lead Plaintiff's proposed service on Skadden is not prohibited by international agreement, and is routinely ordered by courts in cases like this one. As the Supreme Court has explained, the "only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988). Given that Skadden is a U.S.-based law firm headquartered in New York City, Lead Plaintiff's proposed service "would not run afoul of the Hague Convention . . . [because] no documents would be transmitted abroad." *In GLG Life Tech. Corp.*, 287 F.R.D. at 267; *see also RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel.").

*Third*, service through New Oriental's litigation counsel in this case would comport with constitutional notions of due process. "Due process requires that the method of service provide[ ] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In GLG Life Tech. Corp.*, 287 F.R.D. at 267. "Courts have sensibly held that service on a high-level employee's corporate employer, or counsel for that employer," comports with due process because it is "reasonably calculated" to apprise the employee of the pendency of the action. *Stream SICAV*, 989 F. Supp. 2d at 279.

That means of service is particularly appropriate here in light of the fact that the Executive Defendants have already been apprised of this action. Indeed, New Oriental's latest Annual

Report—which was approved by each of the Executive Defendants and filed with the SEC and Hong Kong Exchange—notes that New Oriental and "certain of [its] officers and directors," (i.e., the Executive Defendants) were named as defendants in this action. Exs. D and E. That same filing includes details about the litigation, including that each of the Executive Defendants have been named in the action, the claims asserted by the Lead Plaintiff, the Class Period, and the nature and subject matter of the alleged misstatements. Exs. D and E. Presumably, each of the Executive Defendants reviewed the Annual Report—including its description of this lawsuit—before signing it and authorizing its filing with U.S. and Hong Kong securities regulators. In other words, the facts suggest that not only have the Executive Defendants been apprised of this litigation, but that they have significant information concerning the particulars of the case.

Even in the implausible scenario in which the Executive Defendants did not already know that they are defendants in this case, service on Skadden would provide them the necessary notice. When a party seeks to serve an individual through counsel, some courts have required a showing of "adequate communication between the individual and the attorney." *In GLG Life Tech. Corp.*, 287 F.R.D. at 267. But where, as here, the "circumstances of this case make clear that" service on counsel here is "virtually guaranteed" to provide notice, no evidence of the counsel's communications with the party is required. *Id.* That is because the circumstances of cases such as this one make it "impossible to imagine that a corporation's attorney would not advise the corporation's Chairman[,] Chief Executive Officer[, and CFO] of the fact that service destined for [those] officer[s] had been made upon its attorney." *Id.*

Moreover, here, Skadden has been identified as counsel to New Oriental in numerous SEC filings and in communications involving the Executive Defendants and the SEC since at least 2009 (*see, e.g.*, Exs. D, E, H, I); served as litigation counsel to New Oriental in securities class actions,

including *Chan v. New Oriental Education & Technology Group Inc.*, 2:16-cv-09279-KSH-CLW (D.N.J.) and *In re New Oriental Education and Technology Group Securities Litigation*, 1:12-cv-05724-JGK (S.D.N.Y.); and advised New Oriental on certain events at issue in the Complaint (*see, e.g.*, Complaint at ¶¶82-83; *see also* Ex. H).   Under these circumstances, it is "all but inconceivable" that Skadden would not inform the Executive Defendants of this lawsuit, in the implausible event they have not already done so.  *See, e.g.*, *Stream SICAV*, 989 F. Supp. 2d at 279-80.  Moreover, service through Skadden would be particularly appropriate in light of the fact that the Executive Defendants are high-ranking officers and board members of the named issuer defendant in this case, "whose actions [they] presumably control[]." *In GLG Life Tech. Corp.*, 287 F.R.D. at 267.

For these reasons, the Court should grant alternative service of the Complaint through Skadden.

### B.    New Oriental Lacks Standing To Contest This Motion And Its Arguments Against Alternative Service Lack Merit

It is black letter law that parties may only "assert only their own legal rights and interests, and not the legal rights and interests of third parties." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).  As such, "[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ("disregard[ing] [] brief in opposition to plaintiffs' motion for court-ordered service on lack of standing grounds") (collecting cases).  Because New Oriental has already been properly served (ECF No. 56), it lacks standing to object to alternative service on the Executive Defendants.

In any event, New Oriental's arguments against alternative service are without merit.  First, New Oriental contends that service through the Hague Convention is required because Lead

Plaintiff has not "attempted" service through the Hague Convention. *See* ECF No. 65. But as set forth above, the Executive Defendants' addresses are "unknown" under this Circuit's standards and thus service through the Hague Convention is not possible. *See Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 2020 WL 5350271, at *4 (S.D.N.Y. Sept. 4, 2020); *Shen*, 2018 WL 4757939, at *4 (finding efforts reasonably diligent, and approving service by email, where plaintiff investigated physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (finding address was "not known," and Hague Convention inapplicable, where plaintiff had "actively, though unsuccessfully, attempted to obtain [defendant's] address in a variety of ways").[5]

Second, New Oriental suggests that the level of detail provided about Lead Plaintiff's investigatory efforts is somehow insufficient and that Lead Plaintiff could attempt serve the Executive Defendants at a business address. *See* ECF No. 65 at 2-3. New Oriental is wrong. Lead Plaintiff's description of its unsuccessful efforts to identify addresses for service are appropriately detailed and substantial. *See* Ex. B at ¶¶5-10. Further, courts have repeatedly rejected the notion

---

[5] Lead Plaintiff's efforts exceed those in New Oriental's cases where the courts found additional diligence was required. *Smart Study Co. v. Acuteye-US*, 2022 WL 2872297, at *6 (S.D.N.Y. July 21, 2022) ("only investigation . . . was a mere perusal of a defendant's" website); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 2018 WL 11222556, at *2 (S.D.N.Y. Apr. 6, 2018) (single in-house investigator searching for addresses on public databases over two days); *In re Sinohub, Inc. Sec. Litig.*, 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013) (investigation only into "public databases of corporate entities located in China and Hong Kong"); *Devi v. Rajapaska*, 2012 WL 309605, at *2 (S.D.N.Y. Jan. 31, 2012) (no attempt to actually effectuate service of President of Sri Lanka and unique "diplomatic implications of this action"). Moreover, none of New Oriental's cases address the impact on the ability to obtain residential address information in light of data privacy laws passed in 2021 and regulatory guidance issued in 2022 in China that limit the ability of parties to ascertain and process such information. *Cf. Cadence Design Sys., Inc. v. Syntronic AB*, 2022 WL 2290593, at *3-5 (N.D. Cal. June 24, 2022) (addressing impact of recently enacted Chinese privacy laws in discovery context); *Owen v. Elastos Foundation*, 2023 WL 194607, at *5-12 (S.D.N.Y. Jan 11, 2023) (similar); Ex. C at ¶6.

that service at a business address would somehow be sufficient.  Rather, the "Hague Convention requires that the defendant be served at his address — the actual, current place where he lives." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 145 (S.D.N.Y. 2021) (finding that service was improper because defendant was not served at residential address); *see also Shen*, 2018 WL 4757939, at *4 (rejecting argument that Hague Convention service was required at an address that plaintiff believed service would be ineffective, noting lack of "any authority" supporting argument); *Baliga*, 2020 WL 5350271, at *4 (rejecting argument that identification of address in China where service could be "attempted" enabled service through Hague Convention, as defendant refused to confirm whether address was correct or that he would in fact accept service there).[6]

Third, New Oriental wrongly suggests that the prejudice in terms of delay is the sole factor supporting Lead Plaintiff's request for alternative service.  But while the delay here is certainly prejudicial, there are other judicial inefficiencies if alternative service is not granted—such as those that would accompany "decoupling" litigation of the claims against the Executive Defendants from those against New Oriental that would necessarily follow from requiring Lead Plaintiff to attempt service through the Hague Convention (and without the information needed to begin to attempt that process).

Last, New Oriental suggests that service through Skadden is somehow inappropriate because Lead Plaintiff has not established sufficient communication between Skadden and the Executive Defendants.  This argument is also meritless.

---

[6] New Oriental's suggestion that service through the business addresses Lead Plaintiff's investigators have identified is particularly meritless in light of the fact that the CEO, CFO and Chairman of New Oriental have refused to have the Company's litigation counsel accept service or provide any information needed for Lead Plaintiff to accomplish it.

Contrary to Skadden's suggestion, courts are clear that, where the individuals to be served are current senior-ranking officers or directors of a corporate party—as they are here—an adequate level of communication to provide notice can rightfully be presumed. *See, e.g., GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. at 267 (noting it is "impossible to imagine that a corporation's attorney would not advise the corporation's Chairman and Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney"); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 566 (C.D. Cal. July 17, 2012) ("Even if the individual defendants are not actively involved in directing the litigation, their close connection to [the issuer defendant as its CEO, CFO, and director, respectively] makes it all but certain that when [they] are served through the company's counsel or its agent, they will receive notice of the suit."); *Ehrenfeld v. Salim A Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (presuming attorneys that represented party in another case "must be in communication with Defendant").

Moreover, even in New Oriental's cases, courts are clear that service through corporate counsel is appropriate where the individuals to be served already received notice of a suit—a fact the Executive Defendants could hardly contest here, having authorized regulatory filings that discuss this suit. *See* Exs. D, E; *see also, e.g., Prediction Co. v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (noting defendant was "aware of this suit" in authorizing service); *LG Elecs., Inc. v. Asko Appliances, Inc.*, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (noting defendant was "on notice of the contents of the instant complaint").

In any event, contrary to New Oriental's suggestion, Lead Plaintiff has provided significant evidence of that contact. Skadden has not only been New Oriental's counsel for well over a decade, including in connection with the company's secondary listing on the Hong Kong Exchange alleged in the Complaint (¶¶83-84), but suggesting that Skadden was not in communication with

15

the three most senior officers of New Oriental about this matter would run contrary to Skadden's own description of how it advises its clients in these types of cases, and its clients' descriptions of how Skadden communicates with them.  *See, e.g.*, Ex. F.  For example, the former head of Skadden's China practice who left the firm after this case was filed, and who served as counsel to New Oriental in connection with its secondary listing in Hong Kong (¶¶83-84) and in correspondence with the SEC and Defendant Minhong Yu, was described in news accounts as very communicative with clients, including by responding to "their emails at 2 in the morning." Ex. G, H, I.  Her two successors, the current co-heads of Skadden's China practice, Paloma Wang and Haiping Li, who served as New Oriental's counsel in its secondary listing (¶¶83-84) and have represented New Oriental's online subsidiary Koolearn, have been similarly described by clients as "always there to help" and "always walk[ing] in the client's shoes." Exs. J, K, L, M.[7]  The close involvement that Skadden's lawyers had with some of the events underlying this lawsuit and their long standing and substantial ties with New Oriental and its senior management only further buttress the conclusion that service on New Oriental's CEO, CFO and Chairman through New Oriental's litigation counsel in this case will provide notice to the Executive Defendants.

---

[7] Defendants' cases are not to the contrary, and proof of regular, relevant, and recent communication is not the standard they impose.  ECF No. 65 at 3.  Rather, the test is whether service through counsel is "reasonably calculated, under all the circumstances, to apprise [the Executive Defendants] of the pendency of the action and afford [them] an opportunity to present [their] objection." *RSM Prod. Corp. v. Fridman*, 2007 WL 22954907, at *5 (S.D.N.Y. Aug. 10, 2007).  Indeed, in the two cases cited by New Oriental where service through corporate counsel was denied support alternative service here.  In *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 399 (S.D.N.Y. Mar. 27, 2014), the court noted the company's counsel represented that it could not effectuate service on the individual, a former director—something that Skadden has not represented it would be unable to do accomplish with respect to the current officers here. And , in rejecting service upon a law firm that represented a separate party in the case but did not know where the parties to be served "live or work or how to afford them," the court in *Madu, Edozie & Madu, P.C. v SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 116 (S.D.N.Y. 2010), suggested a long-term attorney-client relationship like Skadden and New Oriental's here would suffice. *Id.*

## IV.    CONCLUSION

For the reasons above, Lead Plaintiff respectfully requests that the Court order alternative service on the Executive Defendants through Skadden or through other means the Court deems appropriate.

Dated: March 14, 2023
      New York, New York

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Michael D. Blatchley*
Salvatore J. Graziano
Michael D. Blatchley
Mathews R. de Carvalho
Jonathan G. D'Errico
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400
Fax: (212) 554-1444
salvatore@blbglaw.com
michaelb@blbglaw.com
mathews.decarvalho@blbglaw.com
jonathan.derrico@blbglaw.com

*Counsel for Lead Plaintiff ACATIS
Investment Kapitalverwaltungsgesellschaft
mbH and Lead Counsel for the Class*